**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **IFEANYI DIBIE NWAOZOMUDOH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-2105-HE** |
| | ) | |
| **FRED FIGUEORA, Warden, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Ifeanyi Dibie Nwaozomudoh, a noncitizen,[1] native of Mozambique, and Nigerian citizen proceeding pro se, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge Joe Heaton referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 5. The undersigned set an expedited briefing schedule, Doc. 7, and the Petition is at issue. For the reasons below, the undersigned recommends that the Court grant in part the Petition, Doc. 1, and order Respondents to provide Petitioner with a bond hearing within seven days or otherwise release him if there is no hearing within that time.

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I. **Background**

Petitioner, a citizen of Nigeria, entered the United States on or about February 19, 2016, as a lawful permanent resident. Doc. 9-1 at 1 (Notice to Appear).[2] On July 17, 2024, he was indicted by the State of Texas for "intentionally or knowingly possess[ing] . . . methamphetamine[] of one gram or more but less than four grams, including any adulterants or dilutants." Doc. 9-2 at 8 (Indictment) (citation modified); *see also id.* at 9 (Complaint). On April 3, 2025, Petitioner pleaded guilty to a third-degree felony for violating Texas Health & Safety Code § 481.115(c). *Id.* at 1 (Order of Deferred Adjudication); Doc. 2 at 1-2. The Texas court accepted his plea, placed him on "deferred adjudication community supervision" for 24 months, and assessed fines, court costs, fees, and restitution totaling $1,062.00. *See* Doc. 9-2 at 1 (citation modified); *see also id.* at 2; *id.* at 5 (Bill of Costs); *id.* at 6-7 (Conditions of Community Supervision). From the record available, it does not appear he served any time in prison following his plea.

On November 6, 2025, ICE issued an arrest warrant for Petitioner. Doc. 9-4 at 1 (Warrant for Arrest of Alien). On November 20, 2025, ICE placed him into removal proceedings before the Immigration Court pursuant to 8 U.S.C. § 1229a through the issuance of a Notice to Appear ("NTA"), and charged him with being removable under 8 U.S.C. § 1227(a)(2)(B)(i) as someone who was "convicted of a violation of . . . a[] law or regulation of a State . . . relating to a controlled substance . . . other than a single offense

[2] Citations to all filings use the CM/ECF page numbers in the documents' headers. Petitioner alleges he "has been a lawful permanent resident since 2015," not since 2016. Doc. 2 at 1. Whether his status began in 2015 or in 2016 is not dispositive.

involving possession for one's own use of 30 grams or less of marijuana." Doc. 9-1 at 1, 4 (quoting § 1227(a)(2)(B)(i)); *see also* Doc. 9-3 at 2 (ICE Encounter Summary). ICE arrested Petitioner the same day, when he attended a probation appointment. Pet. at 4; Doc. 2 at 2; Doc. 9-3 at 2; Doc. 9-4 at 1. This arrest occurred two weeks after the warrant was issued. Doc. 9-4 at 1.

On June 11, 2026, an Immigration Judge ordered Petitioner removed to Nigeria. Pet. at 4; Doc. 9-5 at 1 (IJ Order); *see* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/ (last visited Nov. 2, 2026). He timely appealed the order of removal to the Board of Immigration Appeals, and his appeal is pending. Pet. at 5; EOIR, *supra*. Therefore, the removal order is not yet final under 8 C.F.R. § 1241.1(c). *See* Resp. at 3 (agreeing the order of removal is not final).

When Petitioner filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma. Pet. at 1. He remains detained there. *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited Nov. 2, 2026); *see also* Doc. 10-2 at 1-3 (Pet'r Statement of Facts) (explaining, as of September 4, 2026, ICE attempted to transfer Petitioner to a new facility but did not ultimately do so).

## II. <u>Petitioner's Claims</u>

Petitioner asserts four counts in his Petition.

- **Count I: Violation of Fifth Amendment Due Process.** Petitioner alleges ICE "arrested and detained [him] with no notice, no proof of warrant, [and] no individualized determination of flight risk." Pet. at 6. He also alleges he had no opportunity to be heard, all of which violated his right to procedural due process. *Id.*

- **Count II: Violation of Due Process.** Petitioner alleges he has "a constitutionally protected liberty interest in remaining free from immigration custody" and he was not provided "required process prior to . . . being detained by ICE." *Id.* (citation modified).

- **Count III: Violation of Fifth Amendment Due Process.** Petitioner alleges his "detention bears no reasonable relation to the Government's interest in preventing flight and danger," so it is "devoid of any reasoned justification." *Id.* (citation modified). He also alleges he did not receive a required "individualized bond redetermination hearing," resulting in a violation of his right to substantive due process. *Id.*

- **Count IV: Violation of Immigration and Nationality Act ("INA").** Petitioner alleges ICE violated 8 U.S.C. § 1357 by arresting him without a warrant when he was not a flight risk. Pet. at 7.

- **Count V: Ineffective Assistance of Counsel.** Petitioner alleges his "immigration counsel was responsible for filing [his] appeal," but "provided a very deficient performance during [his] entire removal proceeding." *Id.* (citation modified).[3]

He asks the Court to "order Respondents to immediately release [him] from custody." *Id.* (citation modified). Alternatively, Petitioner seeks "a prompt individual hearing with the Government bearing the burden of proof by clear and convincing evidence [that he is] an articulable threat or flight risk." *Id.* (citation modified); *see also* Doc. 2 at 1.[4]

---

[3] It is unclear if Petitioner intends his last allegation to be an additional ground for relief or to provide background information. *See* Pet. at 7. The undersigned liberally construes the Petition to include a fifth alleged ground for relief.

[4] Petitioner also seeks an "award [of] costs and attorneys' fees under the Equal Access to Justice Act." Pet. at 7 (citation modified). He is proceeding pro se. To the extent costs or attorneys' fees are available to Petitioner as a prevailing party, he must seek them after a final judgment. 28 U.S.C. § 2412(d)(1)(B). The Court need not address this request at this juncture.

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Analysis

### A. Section 1226(c) applies to Petitioner's detention.

The two sections of the INA at issue that govern detention of noncitizens pending removal proceedings are 8 U.S.C. §§ 1225 and 1226. This case involves application of § 1226. Relevant here, § 1226(a) authorizes detention of a noncitizen pending removal proceedings and entitles the noncitizen to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). However, § 1226(c) authorizes mandatory detention pending entry of a final order of removal for certain criminal noncitizens.

Petitioner alleges Respondents must make an individualized determination that he is a danger to the community or a flight risk to justify his continued detention. Pet. at 6-7. Respondents contend he is properly detained under § 1226(c).[5] Resp. at 7-9. Specifically,

---

[5] Respondents also allege Petitioner is properly detained under 8 U.S.C. § 1225(b)(2)(A). Resp. at 4-5. The Tenth Circuit recently rejected the statutory interpretation of § 1225(b)(2) urged by Respondents and instead applied § 1226(a) to govern detention of

Respondents allege Petitioner is subject to mandatory detention under § 1226(c)(1)(B). Resp. at 8.[6]

"The Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)." 8 U.S.C. § 1226(c)(1)(B). And § 1227(a)(2)(B) makes "any alien . . . deportable" who "at any time after admission has been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana." *Id.* § 1227(a)(2)(B)(i) (citation modified). "Controlled substance" is defined in 21 U.S.C. § 802(6) as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of [21 U.S.C. §§ 811-814]," with exceptions not relevant here.

These sections apply. First, Petitioner does not argue his guilty plea in state court and the Order of Deferred Adjudication entered by the Texas judge fail to qualify as a "convict[ion]" under § 1227(a)(2)(B)(i). Within the INA, a "conviction" includes "a formal judgment of guilt of the alien entered by the court or, if adjudication of guilt has been withheld, where (i) . . . the alien has entered a plea of guilty or nolo contendere or has

---

noncitizens who are not subject to mandatory detention under § 1226(c). *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1235-49 (10th Cir. 2026). Respondents acknowledge "the issue of detention of noncitizens such as Petitioner is generally controlled by the Tenth Circuit's opinion in *[Santillan] Quiroz*." Resp. at 4. Accordingly, the undersigned rejects Respondents' argument for § 1225(b)(2)(A)'s application.

[6] Respondents also appear to quote a portion of 8 U.S.C. § 1226(c)(1)(A). Resp. at 8. The undersigned presumes this was inadvertent based on the rest of their argument and addresses only § 1226(c)(1)(B).

admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." 8 U.S.C. § 1101(a)(48)(A) (citation modified).

Petitioner entered a plea of guilty, Doc. 9-2 at 1, satisfying the first prong for a "conviction." And the Texas judge sentenced him to pay fines, restitution, court costs, and fees, and placed him on deferred adjudication community supervision for two years. *Id.* at 1-2, 6. This satisfies the second prong requiring a judicial order for "some form of punishment[ or] penalty." 8 U.S.C. § 1101(a)(48)(A)(ii). *See United States v. Zamudio*, 314 F.3d 517, 522 (10th Cir. 2002) (analyzing a sentencing enhancement in an illegal re-entry case and applying § 1101(a)(48) to a state court "plea in abeyance" for distribution of marijuana where the state court "imposed a penalty in the form of a $1,000 fine").

That the Texas judge "deferred" an "adjudication of guilt" for Petitioner, Doc. 9-2 at 1 (citation modified), does not change this result. *See* § 1101(a)(48)(A) (allowing a "conviction" to exist even "if adjudication of guilt [is] withheld"); *United States v. Mondragon-Santiago*, 564 F.3d 357, 368 (5th Cir. 2009) ("Federal law counts Texas's deferred adjudication probation as a conviction." (analyzing § 1101(a)(48) in an illegal re-entry case to determine whether a prior conviction was an aggravated felony after the defendant's sentence was for "four years of deferred adjudication probation")); *Zamudio*, 314 F.3d at 521 (citing *White v. INS*, 17 F.3d 475, 479 (1st Cir. 1994), for the proposition that "federal law," not state law, "defines [the] term conviction as used in [the] immigration context" (citation modified)); *Moosa v. INS*, 171 F.3d 994, 1005-06 (5th Cir. 1999) (concluding a "deferred adjudication satisfies the second prong of [the] 'conviction'

definition" under § 1101(a)(48)(A) because such adjudications grant the trial judge discretion to "place the defendant on community supervision" or "impose a fine applicable to the offense" (citation modified)).

Second, the state charge against Petitioner "relat[es] to a controlled substance." 8 U.S.C. § 1227(a)(2)(B)(i). The indictment to which he pleaded guilty is for "intentionally or knowingly possess[ing] a controlled substance, namely methamphetamine, of one gram or more but less than four grams, including any adulterants or dilutants." Doc. 9-2 at 8 (citation modified); *see* Doc. 9-2 at 1 (showing Petitioner's plea of "guilty," the charging instrument as an "indictment," and the "statute for offense" as Tex. Health & Safety Code § 481.115(c) (citation modified)). Methamphetamine is a controlled substance for INA purposes. 21 C.F.R. § 1308.12(d)(2) (Schedule II); *Valdes v. Lyons*, No. 26-cv-1066, 2026 WL 1352107, at *1 (D.N.M. May 14, 2026) (citing 21 U.S.C. §§ 802(6), 812). The built-in exception for "possession for one's own use of 30 grams or less of marijuana" does not apply. 8 U.S.C. § 1227(a)(2)(B).

Accordingly, § 1226(c)(1)(B) governs, and Petitioner is subject to mandatory detention under the INA unless it has become unconstitutional. *See Jennings*, 583 U.S. at 305-06 (concluding "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes"). The Court should deny Petitioner's claim that his detention violates the INA.

### B. Petitioner's prolonged detention violates due process, and the proper remedy is a bond hearing.

Petitioner also alleges his detention is so prolonged that it violates his rights to due process. Pet. at 6-7. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings. At the same time, however, [the Supreme] Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citation modified). In *Demore*, a noncitizen subject to § 1226(c) mandatory detention claimed his detention "violated due process because [the predecessor to ICE] had made no determination that he posed either a danger to society or a flight risk." *Id.* at 514. The Supreme Court held that detention of noncitizens "during removal proceedings is a constitutionally permissible part of [the removal] process." *Id.* at 531.

*Demore* "rejected facial challenges to mandatory detention under § 1226(c)." *Hernandez v. Mullin*, No. CIV-26-475-R, 2026 WL 1625669, at *1 (W.D. Okla. June 5, 2026); *see also id.* at *2 (collecting cases); *Sosa v. Greene*, 68 F. App'x 901, 902 (10th Cir. 2003) (applying *Demore* to a facial challenge in this circuit). But "noncitizens detained under § 1226(c) may, in some circumstances," still "bring as-applied Due Process challenges to their prolonged detentions." *Hernandez*, 2026 WL 1625669, at *2; *cf. Jennings*, 538 U.S. at 299, 302-03, 312 (holding, as a matter of statutory construction, that § 1225(b)(1)(B)(ii) mandates detention while a noncitizen's asylum claim is pending, but reserving ruling on whether prolonged detention under § 1225(b) can violate due process).

As a threshold matter, Petitioner's procedural due process claim should be denied. For a procedural due process analysis, "whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) (citation modified); *see also Rolia v. Mullin*, No. CIV-26-423-R, 2026 WL 1833993, at *1 (W.D. Okla. June 25, 2026) (concluding in the § 1226(a) context that "the process Petitioner is due is the process provided by that statute"). Because, as discussed above, § 1226(c)(1)(B) mandates detention without the opportunity for a bond hearing, Petitioner's ongoing detention does not violate his procedural due process rights.

With respect to substantive due process, however, things are different. Neither the Tenth Circuit nor the Supreme Court has provided guidance explaining when a noncitizen's mandatory detention under § 1226(c) becomes unconstitutional through a substantive due process analysis. Similarly, this Court has not yet addressed whether prolonged detention without a bond hearing under § 1226(c) violates substantive due process. The undersigned finds the reasoning of Judge Russell in recent cases considering this issue to be persuasive.

In *Jalloh v. Garland*, Judge Russell considered a prolonged detention claim brought by a noncitizen detained under § 1226(c). No. CIV-22-908-R, 2023 WL 3021514, at *1 (W.D. Okla. Mar. 9, 2023). He explained that "[i]n *Demore*, the Supreme Court declined to indicate at what point a period of mandatory detention is so prolonged that detainees are entitled to an individualized determination as to their risk of flight and dangerousness." *Id.* at *2 (citation modified). To answer that question, Judge Russell explained, it was necessary to consider six factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at *3 (citation modified).[7] Ultimately, Judge Russell concluded these factors weighed in favor of finding a due process violation and ordered the Government to provide the noncitizen with a bond hearing. *Jalloh v. Garland*, No. CIV-22-908-R, 2023 WL 3690252, at *3 (W.D. Okla. May 26, 2023) (adopting 2023 WL 3690259 (W.D. Okla. Apr. 26, 2023) (R&R)); *see also Chiwocha v. Figueroa*, No. CIV-26-1189-R, 2026 WL 2569498, at *4-6 (W.D. Okla. Aug. 31, 2026) (R&R) (applying the *Singh* factors in a § 1226(c) substantive due process analysis), *adopted* 2026 WL 2790122 (Sept. 17, 2026); *Smith v. Barr*, 444 F. Supp. 3d 1289, 1301-04 (N.D. Okla. 2020) (same).[8]

[7] These are sometimes referred to as the "*Singh* factors" due to *Singh v. Choate*—the first time they were used within the Tenth Circuit. No. 19-cv-909, 2019 WL 3943960, at *5 (D. Colo. Aug. 21, 2019).

[8] In a recent decision, Judge Russell also adopted Judge Mitchell's recommendation to evaluate a prolonged detention claim by a noncitizen detained under § 1226(c) using the factors established by *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Hernandez v. Mullin*, No. CIV-26-475-R, 2026 WL 1625669, at *2-3 (W.D. Okla. June 5, 2026) (adopting in part 2026 WL 1245748, at *4-5 (W.D. Okla. May 6, 2026) (R&R)). Judge Russell explained that while "*Mathews* generally applies in the context of procedural rather than substantive due process," it can be applied to substantive due process claims brought by noncitizens detained under § 1226(c). *Id.* at *2-3 (citation modified). Respondents, without addressing the six-factor test used by Judge Russell in *Jalloh* or the three-factor test used by Judge Mitchell in *Lopez Pizarro*, assert *Mathews* controls a substantive due process analysis. Resp. at 11-13. The undersigned is persuaded that the *Singh* factors are more instructive than the *Mathews* factors for evaluating the constitutionality of a petitioner's prolonged detention under § 1226(c). *See Khasanova v. Rokosky*, No. CV-26-

Judge Mitchell recently considered a due process claim of prolonged detention brought by a noncitizen detained under § 1226(c) in *Lopez Pizarro v. Gantt.* No. CIV-26-362-SLP, 2026 WL 2029042, at *3 (W.D. Okla. June 12, 2026) (R&R), *adopted*, 2026 WL 2023599 (W.D. Okla. July 13, 2026). In evaluating whether the petitioner's detention was so prolonged as to be constitutionally unreasonable, Judge Mitchell relied on a three-factor test used by the Eastern District of California in *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022). *Lopez Pizarro*, 2026 WL 2029042, at *3. That test considers "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Id.* (quoting *Lopez*, 631 F. Supp. 3d at 879). Applying those factors, Judge Mitchell concluded the petitioner had failed to establish his seven-month detention was so prolonged as to violate due process. *Id.* at *4.

The undersigned finds the six-factor test that Judge Russell applied in *Jalloh* appropriate for determining whether Petitioner's detention under § 1226(c)(1)(B) is constitutionally unreasonable and considers each factor in turn.[9]

**1. Total length of detention to date.**

Petitioner has been detained since November 20, 2025, which currently amounts to more than 11 months of continuous detention. Pet. at 4; Doc. 9-4 at 1. In cases where

---

763, 2026 WL 1815723, at *6 (D. Ariz. June 24, 2026) (comparing the relative uses and advantages of the *Singh*, *Lopez*, and *Mathews* tests).

[9] If the Court declines to apply the *Singh* factors and instead applies the three-factor test Judge Mitchell used in *Lopez Pizarro*, those factors also weigh in favor of finding Petitioner's ongoing detention is constitutionally unreasonable.

petitioners were detained for similar periods of time, courts in this Circuit have concluded the length-of-detention factor supports finding a due process violation. *See, e.g.*, *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-881, 2025 WL 3653158, at *11 (D. Colo. Dec. 17, 2025) (finding § 1231(a)(6) detention of nine months weighed in the petitioner's favor); *Sheikh v. Choate*, No. 22-cv-1627, 2022 WL 17075894, at *3 (D. Colo. Jan. 27, 2022) (concluding § 1226(c) detention of "nearly 13 months" weighed in the petitioner's favor). Other courts have found § 1226(c) detention of approximately a year unreasonable as well. *See Hernandez*, 2026 WL 1245748, at *3 (holding by Judge Russell that a bond hearing was required for a noncitizen who was detained under § 1226(c) "for more than six months" when analyzing substantive due process under *Mathews*); *Marquez v. Warden*, No. 26-cv-1527, 2026 WL 1557180, at *2 (D.N.M. June 2, 2026) (holding § 1225(b) detention of "more than seven months" violated substantive due process without applying the *Singh* factors); *Jalloh*, 2023 WL 3690259, at *4 (collecting cases); *Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 433-34 (3d Cir. 2026) (explaining § 1226(c) detention "becomes more and more suspect after five months" and, in most cases, will become "unreasonable sometime between six months and one year after it began" (citation modified)). Thus, the first factor weighs in Petitioner's favor.

**2. Likely duration of future detention.**

The next factor is the likely duration of Petitioner's future detention. "Courts examine the anticipated duration of all removal proceedings—including administrative and judicial appeals—when estimating how long detention will last." *Jalloh*, 2023 WL 3690259, at *5 (citation modified).

While an IJ has ordered Petitioner removed, he has appealed that decision. *See* EOIR, *supra*. "Petitioner's appeal to the BIA and, if unsuccessful there, to the Tenth Circuit Court of Appeals, could take years." *Mardanpour v. Warden*, No. 26-cv-550, 2026 WL 963164, at *6 (D.N.M. Apr. 9, 2026) (holding § 1225(b) detention violated substantive due process without applying the *Singh* factors); *see also Ali X v. Bondi*, No. 26-cv-1367, 2026 WL 1857825, at *5 (D. Colo. June 29, 2026) ("Although DHS's appeal remains pending before the Board of Immigration Appeals, no decision has yet been issued. Thus, Petitioner's [§ 1225(b)] detention may continue for a substantial and presently indeterminate period"). And even if Respondents ultimately prevail and Petitioner's order of removal becomes final, there is no guarantee he will be expeditiously removed. *See Singh*, 2026 WL 39493960, at *6 (calculating the likely duration of future detention for a noncitizen at a similar stage of immigration proceedings). Thus, this factor weighs in Petitioner's favor.

**3. Conditions of detention.**

The next factor considers "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." *Jalloh*, 2023 WL 3690259, at *5 (citation omitted). "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted).

The Petition does not specify the conditions of Petitioner's detention. However, he is detained at Diamondback Correctional Facility, which ICE describes as a "jail." *Diamondback Correctional Facility: Sending Items to Detainees*, U.S. Immigration &

Customs Enforcement, https://www.ice.gov/detain/detention-facilities/diamondback-correctional-facility (last visited Nov. 2, 2026). Where a noncitizen is "confined in a secure detention facility and is subject to significant restraints on his liberty," his confinement "is akin to criminal incarceration." *Ali X*, 2026 WL 1857825, at *5. This factor also weighs in Petitioner's favor.

**4. Delays in the removal proceedings caused by Petitioner.**

The next factor is whether Petitioner has delayed the removal proceedings against him. "In considering delays in the removal proceedings caused by the detainee, courts should be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration." *Jalloh*, 2023 WL 3690259, at *5 (citation modified). However, a noncitizen's mere exercise of his legal rights cannot weigh against him; instead, courts look for evidence of "bad faith or obstructive conduct." *Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 851 (E.D. Va. Aug. 11, 2020) (applying a three-factor test to § 1225(b) detention); *see also Ali X*, 2026 WL 1857825, at *5 ("Petitioner's pursuit of asylum and defense against removal do not constitute unreasonable delay and were exercised as rights afforded to him under the immigration laws."); *cf. Jalloh*, 2023 WL 3690259, at *5 ("This Court will not hold Petitioner's efforts to seek relief through the available legal channels against him; in fact, Petitioner's appeal to the BIA resulted in a remand."). As such, this factor is neutral. *See Ali X*, 2026 WL 1857825, at *5 (finding this factor "neutral" where any delay in the petitioner's removal proceedings was not attributable to him).

**5. Delays in the removal proceedings caused by the government.**

Next, the Court must consider whether any delays in the removal proceedings were caused by the Government. Petitioner does not allege the Government delayed his immigration proceedings by, for example, rescheduling hearings. Certainly, there is no evidence of "lack of diligence or bad faith" by Respondents in the record. *Mbalivoto*, 527 F. Supp. 3d at 851. This factor is also neutral.

**6. Likelihood that removal proceedings will result in a final order of removal.**

Finally, the Court must consider whether, at the end of his removal proceedings, Petitioner will be removed. "The more likely that the alien will be removed, the longer the detention that will be deemed reasonable." *Vizguerra-Ramirez*, 2025 WL 3653158, at *12 (citation modified). In evaluating this factor, courts consider the extent to which either the petitioner or the government has prevailed in Immigration Court. *See Ali X*, 2026 WL 1857825, at *6 ("An Immigration Judge has already determined, following merits proceedings, that Petitioner qualifies for asylum. Although DHS may ultimately prevail on appeal, Petitioner presently possesses a favorable ruling from an Immigration Judge, and no final order of removal exists."); *Mbalivoto*, 527 F. Supp. 3d at 851 ("The BIA previously remanded an adverse determination of his eligibility to stay in the United States; and at this point, after one round of appeals, Petitioner has prevailed on the merits of his claims before the Immigration Judge. In sum, Petitioner's ultimate success on his application appears increasingly likely; and this factor weighs in favor of granting Petitioner relief.").

Here, an IJ has issued an order of removal against Petitioner. While he has appealed that order to the BIA, there is no evidence in the record to suggest that appeal is likely to succeed. Accordingly, this factor weighs against Petitioner.

**7. Conclusion**

In weighing these six factors, the undersigned finds Petitioner's continued detention of more than 11 months without an individualized bond hearing has become unreasonable in violation of his due process rights. Notably, in *Jalloh*, Judge Russell found a violation of the petitioner's due process rights after determining the first three factors weighed in favor of the petitioner, factors four and five were neutral, and the sixth factor weighed against the petitioner. 2023 WL 3690252, at *2. In similar circumstances to Petitioner's case, Judge Russell found it relevant in *Jalloh* that the petitioner had "been detained for approximately 19 months in a criminal correctional facility and that it may be several more months before all appeals are exhausted." *Id.*; *accord de Zarate v. Choate*, No. 23-CV-571, 2023 WL 2574370, at *5 (D. Colo. Mar. 20, 2023) (finding, for a petitioner detained for more than 14 months under § 1226(c), that even when "factors one, two, and three weigh in favor of [petitioner]; factors four and five are neutral; and factor six weighs against [her]," the factors "when considered together" favored petitioner and a finding that her due process rights were violated (citation modified)).

Where a noncitizen has been detained for an unconstitutional length of time in violation of due process, as Petitioner has, he is entitled to an individualized bond hearing. *See Jalloh*, 2023 WL 3690252, at *2-3 (ordering a bond hearing for a noncitizen subject to

unconstitutional prolonged mandatory detention). The Court should order Respondents to provide him with an individualized bond hearing before a neutral IJ.[10]

Petitioner's request for "the Government [to bear] the burden of proof by clear and convincing evidence" at the bond hearing, though, should be denied. Pet. at 7; Doc. 2 at 1. Judges in this District consistently have declined to order burden shifting. *See, e.g.*, *Pupo Socarras v. Figueroa*, No. CIV-26-571-HE, 2026 WL 2100499, at *1 (W.D. Okla. July 21, 2026) (finding "the Fifth Amendment Due Process clause is not offended by leaving the burden of proof on the non-citizen in a § 1226(a) bond hearing"); *Guzman Morales v. Mullin*, No. CIV-26-587-SLP, 2026 WL 1962374, at *2 (W.D. Okla. July 7, 2026) (declining to address petitioner's burden-shifting claim); *Singh v. Figueroa*, No. CIV-26-600-R, 2026 WL 1181699, at *1 n.2 (W.D. Okla. Apr. 30, 2026) (denying petitioner's request for burden shifting, and holding "although petitioner is entitled to a bond hearing under § 1226(a), the Court declines to specify or alter the burden of proof at this stage").

**C. The Court should decline to address Petitioner's remaining claims.**

Petitioner also argues his arrest violated 8 U.S.C. § 1357. Pet. at 7. The Court need not reach this claim because he has not identified how, if the statute was violated, he is owed greater relief than a bond hearing. If the Court reaches this issue, § 1357(a), as

---

[10] Petitioner asks the Court to "order Respondents to immediately release [him] from custody" or for, "at minimum, a prompt individual hearing." Pet. at 7 (citation modified). While some courts have ordered release as a remedy in immigration habeas matters involving detention under § 1226(c) and substantive due process, *see Deborne v. Warden*, No. 26-cv-1657, 2026 WL 1694566, at *3 (D.N.M. June 11, 2026), the undersigned concludes a bond hearing is the appropriate remedy here.

relevant here, identifies the powers of government officials before a warrant is obtained. The corresponding ICE regulation requires an ICE officer to obtain a warrant unless he "has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii). Here, ICE obtained a warrant on November 6, 2025, and it did not act regarding Petitioner until November 20, 2025. Doc. 9-1 at 1, 4; Doc. 9-4 at 1. As a result, ICE did not violate § 1357.

Petitioner further alleges his counsel in his Immigration Court proceeding provided "deficient performance." Pet. at 7. "However, claims of ineffective assistance of counsel during immigration proceedings may only be judicially reviewed by the appropriate court of appeals" through direct appeal. *Tairab v. Att'y Gen.*, No. 26-cv-450, 2026 WL 2583047, at *1 (D.N.M. Sept. 1, 2026) (citation modified) (citing 8 U.S.C. § 1252(a)(2)(D); *Mendiola v. Holder*, 576 F. App'x 828, 835 (10th Cir. 2014)). This Court need not address that claim.[11]

Finally, Petitioner contends ICE did not legally issue the administrative warrant because it was issued before the NTA. *Compare* Doc. 9-1 at 1 (NTA, issued Nov. 20, 2025), *with* Doc. 9-4 at 1 (Warrant, issued Nov. 6, 2025, and executed Nov. 20, 2025); *see*

[11] To the extent Petitioner challenges the Immigration Court's procedures to issue an order of removal, Doc. 2 at 2, 4, this Court lacks jurisdiction to consider these issues. Section 1252(b)(9) channels "judicial review of all questions of law and fact" from IJ removal proceedings to "judicial review of a final order" for removal by a court of appeals. 8 U.S.C. § 1252(b)(9); *see Aguilar v. U.S. ICE*, 510 F.3d 1, 18 (1st Cir. 2007) (channeling "procedural due process claims" regarding "difficulties in calling witnesses and in presenting evidence at the removal proceedings" to the direct, administrative appeal process under § 1252(b)(9)).

*also* Doc. 2 at 4; Reply at 1-2. However, the relevant regulations—8 C.F.R. §§ 236.1(b) and 1236.1(b)—state only that a noncitizen cannot "be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest" until "the time of issuance of the [NTA], or any time thereafter and up to the time removal proceedings are completed."[12] Here, while the I-200 administrative warrant was *issued* on November 6, 2025, it was not *served* until November 20, 2025. Doc. 9-4 at 1. Petitioner recognizes this distinction's importance. Reply at 2 ("Petitioner does not contend that the November 6 date appearing on the I-200, standing alone, necessarily establishes a violation. The material question is whether ICE used the I-200 to arrest Petitioner before the NTA was issued." (citation modified)).

The arrest date is the same day the NTA was issued. Doc. 9-1. Petitioner has not presented sufficient evidence that he was "arrested and taken into custody under the authority of Form I-200, Warrant of Arrest" before the "time of issuance of the [NTA]." 8 C.F.R. § 236.1(b); *id.* § 1236.1(b) (same). As a result, the undersigned finds no violation of ICE regulations regarding Petitioner's arrest that would warrant release.[13]

---

[12] Section 236.1(b) is the same as § 1236.1(b). "The regulatory history confirms [the chapter including § 1236.1] simply duplicated the relevant parts of [the chapter including § 236.1] when the functions of the Immigration and Naturalization Service were transferred to the Department of Homeland Security. This duplication made no substantive change in the regulations." *S.D.B.B. v. Johnson*, No. 25-cv-882, 2025 WL 2962669, at *3 (M.D.N.C. Oct. 17, 2025) (citation modified).

[13] Courts in other jurisdictions have interpreted 8 C.F.R. §§ 236.1(b) and 1236.1(b) to restrict not only when an administrative warrant can be served, but also when it can issue. *E.g.*, *Tha I v. Blanche*, No. 26-cv-3516, 2026 WL 3093493, at *2 (D. Minn. Oct. 16, 2026) ("Any warrant that is issued before an NTA is, effectively, invalid. And the Government

Further, even if the warrant was invalid because it issued before the NTA, the Supreme Court has recognized "the great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention." *Walker v. Wainwright*, 390 U.S. 335, 336 (1968). "If sufficient ground for [a petitioner's] detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." *Ekiu v. United States*, 142 U.S. 651, 662 (1892) (citation modified). Put another way, "the mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984) (citation modified); *see also id.* at 1039 (stating "the body or identity of a [noncitizen] in a . . . civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred" (citation modified)). Here, even if Petitioner was arrested in violation of 8 U.S.C. § 1357 or 8 C.F.R. §§ 236.1 and 1236.1, his current detention is not based on any initial warrant defect. Rather, on the same day as his arrest, ICE initiated removal proceedings, and § 1226(c) required mandatory detention given his prior deferred adjudication for possession of methamphetamine.[14]

---

possesses no lawful authority to use it."); *Mudiyanselage v. Warden*, No. 26-cv-2969, 2026 WL 2364505, at *5 (E.D. Cal. Aug. 14, 2026) ("The plain language of the [regulation] establishes that Respondents' authority to issue a Form I-200 Warrant of Arrest begins *after* a Notice to Appear is issued."), *adopted* 2026 WL 2495014 (E.D. Cal. Aug. 25, 2026).

[14] Further, Judges in this District have split on the proper remedy for a warrantless arrest in the immigration context. *Compare, e.g.*, *Madzhnunov v. Grant*, No. CIV-26-699-PRW, 2026 WL 2390750, at *1 (W.D. Okla. Aug. 17, 2026) (granting a bond hearing under § 1226(a) and "reserv[ing] a ruling on Petitioner's remaining claims" that included a warrantless-arrest challenge), *Perdigon v. Gantt*, No. CIV-26-949-R, 2026 WL 2428826, at *2 (W.D. Okla. Aug. 19, 2026) ("Petitioner's warrantless arrest does not merit his

## V. Recommendation and Notice of Right to Object

For these reasons, the undersigned recommends that the Court **GRANT in part** the Petition, Doc. 1, for habeas relief by ordering Respondents to provide Petitioner with a bond hearing within seven days or otherwise release Petitioner if he has not received a lawful bond hearing within that period.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **November 9, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **November 13, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 2nd day of November, 2026.

Chris M. Stephens

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE

---

immediate release."), *and Ziiadullaev v. Lyons*, No. CIV-26-1237-D, 2026 WL 2827125, at *1 (W.D. Okla. Sep. 21, 2026) (concluding "the relief warranted" for a warrantless arrest "is a bond hearing pursuant to § 1226"), *with Aguilar-Huanga v. Figueroa*, No. CIV-26-115-J, 2026 WL 821474, at *3 (W.D. Okla. Mar. 25, 2026) (ordering immediate release, "subject to an appropriate Order of Supervision," for a noncitizen detained under § 1226(a) where his "arrest was warrantless").